KLEIN LAW GROUP OF NY PLLC
120 East 79th Street, Suite 1A
New York, New York 10075
(347) 292-8170
*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY CURKO and OSCAR ZARATE,

    Plaintiffs,

- against -

EMBE RESTAURANT CORP. d/b/a OSTERIA 57 and EMANUELE NIGRO,

    Defendants.

**COLLECTIVE ACTION COMPLAINT**

**Jury Trial Requested**

Plaintiffs Anthony Curko and Oscar Zarate by their attorneys, Klein Law Group of New York PLLC, allege upon personal knowledge as to themselves and upon information and belief as to other matters, as follows:

**PRELIMINARY STATEMENT**

1. Defendants Embe Restaurant Corp. d/b/a Osteria 57 ("Osteria 57") and Emanuele Nigro and own and/or operate a restaurant called Osteria 57 which is located at 57 West 10th St, New York City, New York 10011.

2. This lawsuit arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, for Defendants' failure to pay Plaintiffs and other similarly-situated tipped employees all earned minimum wages.

3. Plaintiffs' claims under the FLSA are brought as a collective action, pursuant to 29 U.S.C. §216(b), on behalf of themselves and on behalf of all other similarly-situated persons who elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. 216(b) and who are or were (a) current or former employees of Defendants, including any food service workers, (b) receiving sub-minimum hourly wages under the tip-credit provisions of the federal and state law ("Tip-Credit Employees"), and (c) employed by Defendants at Osteria 57 during the applicable statute of limitations period covered by this Complaint (i.e. two years for FLSA violations, and three years for willful FLSA violations) up to and including the date of final judgment in this matter (the "FLSA Collective").

4. This lawsuit further arises under the New York Labor Law, Minimum Wage Act ("NYLL"), Article 19, § 650, *et seq.*, for Defendants' failure to pay Plaintiffs and other similarly-situated New York food service workers all earned minimum wages and gratuities.

## PARTIES

**Plaintiffs**

5. Plaintiff Anthony Curko is an adult individual who is a resident of New Jersey.

6. Plaintiff Anthony Curko was employed as a server at Osteria 57 from approximately April of 2019 through March of 2020, when government restrictions due to the Covid-19 pandemic began to shut down much of New York City's hospitality industry.

7. Plaintiff Oscar Zarate is an adult individual who is a resident of Bronx, New York.

8. Plaintiff Oscar Zarate was employed as a busser and runner at Osteria 57 from approximately March of 2019 to September of 2019.

9. Plaintiffs are covered employees within the meaning of the FLSA and the NYLL.

**Defendants**

**Embe Restaurant Corp.**

10. Embe Restaurant Corp. is a domestic business corporation organized under the laws of the State of New York with its principal place of business at 57 west 10th Street, New York, New York, 10011.

11. The restaurant was typically open to patrons for dinner:

    a. Mondays through Thursdays from 5:30 p.m. through 10:30 p.m.

    b. Fridays and Saturdays from 5:30 p.m. through 11:00 p.m.

    c. Sundays from 5:00 p.m. through 10:00 p.m.

12. The restaurant was typically open to patrons for lunch or brunch from 11:30 a.m. through 3:30 p.m.

13. Embe Restaurant Corp. has owned and/or operated Osteria 57 during the relevant period, which is where Plaintiffs worked.

14. Embe Restaurant Corp. is a covered employer within the meaning of the FLSA and the NYLL, and, at all times relevant hereto, employed Plaintiffs and similarly situated employees.

15. Upon information and belief, at all relevant times hereto, Embe Restaurant Corp.'s annual gross volume of sales made or business done was not less than $500,000.00 in each of the last three calendar years.

**Emanuele Nigro**

16. Defendant Emanuele Nigro is an individual engaging (or who was engaged) in business within this judicial district during the relevant time period.

17. Defendant Emanuele Nigro is sued individually and in <u>his</u> capacity as an owner, officer and/or agent of Defendant Corporation Embe Restaurant Corp. many articles refer to Mr. Nigro as the owner of Osteria 57. For example, articles found at

https://www.lacucinaitaliana.com/trends/restaurants-and-chefs/nyc-osteria-57-commitment-to-sustainability?refresh_ce= and https://chilledmagazine.com/earth-day-cocktail-menu identify Mr. Nigro as the "owner" of the Osteria 57.

18. Defendant Emanuele Nigro possesses or possessed operational control over Defendant Embe Restaurant Corp. and/or Osteria 57, maintains or maintained an ownership interest in Defendant Embe Restaurant Corp. and/or controlled significant functions of Defendant Embe Restaurant Corp. For example, Defendant Nigro determined the wages and compensation of the employees of Defendants, including Plaintiffs Curko and Zarate, established the schedules of the employees, maintained employee records and had the authority to hire and fire employees.

## JURISDICTION AND VENUE

19. This Court has federal question jurisdiction over Plaintiff's FLSA claims, which arise under 29 U.S.C. § 216(b), pursuant to 28 U.S.C. § 1331.

20. This Court has supplemental jurisdiction over Plaintiff's NYLL claims pursuant to 28 U.S.C. § 1367.

21. Venue is proper in this judicial district because the facts and events giving rise to Plaintiff's claims occurred in this judicial district. 28 U.S.C. § 1391.

## STATEMENT OF FACTS

22. Plaintiff Curko worked as server at Osteria 57.

23. Plaintiff Curko typically worked 6 days per week and his day off was Sundays.

24. Typically, Plaintiff Curko worked over 50 hours per week.

25. Defendants scheduled Plaintiff Curko for every dinner shift, except for Sunday dinners.

26. For each of these dinner shifts, Defendants required Curko to arrive at least one hour before the restaurant opened for patrons to set up the restaurant and he was also required to stay at least one hour after the restaurant closed to patrons to perform clean up duties.

27. Throughout his employment, Defendants failed to pay Plaintiffs Curko any wages.

28. Defendants would direct deposit $1,000 per week into Plaintiff Curko's bank account.

29. Ostensibly, this $1,000 payment constituted the tips that Plaintiff Curko received as a server from Osteria 57's patrons.

30. Often, this $1,000 payment was less than the tips that Plaintiff Curko earned as a server for that particular week.

31. Defendants never paid Plaintiff Curko more than $1,000 in tips even when he earned more money in tip compensation.

32. Defendants never paid Plaintiff Curko more than $1,000 per week and never paid him a direct cash wage for the time he spent working as a server at Osteria 57.

33. Defendants never provided Plaintiff Curko with pay stubs or wage statements along with his weekly direct deposit of $1,000.

34. Defendants never provided Plaintiff Curko with a notice of rate of pay pursuant to New York Labor Law § 195.

35. Plaintiff Zarate worked as server at Osteria 57.

36. Plaintiff Zarate typically worked between 4-5 days per week.

37. Defendants scheduled Plaintiff Zarate to work dinner shifts, and he was expected to work between 4:00 p.m. and 11:30 p.m.

38. Throughout his employment, Defendants paid Plaintiff Zarate a variable cash wage between $7.00 and hour and $8.00 an hour.

39. This direct cash wage was less than the direct cash wage that New York State required employers to pay their food service workers pursuant to New York State Wage Order for the Hospitality Industry, 12 N.Y.C.R.R. § 146-1.3(b).

40. On and after December 31, 2017 the applicable minimum wage was $13.00 per hour, and on and after December 31, 2018, the applicable minimum wage was $15.00 per hour.

41. Pursuant to the New York State Wage Order for the Hospitality Industry, 12 N.Y.C.R.R. § 146-1.3(b), employers that wanted to apply a tip credit towards employees' wages on and after December 31, 2017 employers were required to pay food service workers like Plaintiff Zarate (a busser and runner) a direct cash wage of at least $8.65 per hour, and on or after December 31, 2018, employers that wanted to apply a tip credit towards employees' wages were required to pay food service workers like Zarate a direct cash wage of at least $10.00 per hour.

42. At all times, Defendants failed to pay Plaintiff Zarate and Plaintiff Curko and all members of the FLSA collective a direct cash wage that met these requirements.

43. Defendants never notified Plaintiff Zarate or Plaintiff Curko or any members of the FLSA collective that they intended to apply a tip credit towards their wages. Accordingly, Defendants were not eligible to apply a tip credit towards their employees' wages.

44. Also, Defendants were not eligible to apply a tip credit towards their employees' wages because they allowed Defendant Nigro to participate in the tip pool even though Defendants Nigro was an owner of the restaurant and manager and thus ineligible to participate in the tip pool.

45. Indeed, it was fairly common for Defendant Nigro to add himself to the tip pool. When he did so, he was typically noted in the Defendants' tip log as "Ema."

46. Defendants never provided Plaintiff Zarate with pay stubs or wage statements along with his weekly direct deposit of $1,000.

47. Defendants never provided Plaintiff Zarate with a notice of rate of pay pursuant to New York Labor Law § 195.

**Non-Tipped Duties**

48. Plaintiffs duties included a substantial amount of time spent performing the non-tip producing duties described below.

49. Defendants required Plaintiffs to spend several hours each day performing non-tipped duties unrelated to tipped work, including but not limited to carrying tables, bringing up ice and refilling the ice buckets, setting up tables, carrying water, sweeping, polishing glasses after they are washed, cleaning the shelf for the glasses, cleaning the wood around the restaurant, cleaning the ice buckets, carrying chairs back to their original location at the beginning and at the end of the night, and carrying used plates, glasses and utensils for cleaning, sweeping floors of the entire establishment, including the bathrooms (hereinafter, "non-tip duties").

50. Under both the FLSA and NYLL, Defendants were not entitled to apply a tip credit towards Plaintiffs and members of the FLSA Collective's wages because Plaintiffs and the member of the collective's non-tipped duties exceeded 20% of each workday, or 2 hours per day (whichever was less in each day) (12 N.Y.C.R.R. § 146).

51. Defendants employed the policy and practice of disguising Plaintiffs and members of the FLSA Collective's actual duties to avoid paying Plaintiffs and members of the FLSA Collective at the minimum wage rate, and to enable them to pay Plaintiffs and members of the FLSA Collective's at the lower tip-credited rate by designating her as a bartender instead of a non-tipped employee.

52. Under the FLSA, as interpreted by the Department of Labor (the "DOL"), employers may not take the tip credit for time the employee is engaged in a non-tipped job and instead must be paid at the minimum wage. The DOL has formalized this concept under the "Dual Jobs" regulation:

> Dual jobs. In some situations an employee is employed in a dual job, as for example, where a maintenance man in a hotel also serves as a waiter. In such a situation the employee . . . is a tipped employee only with respect to his employment as a waiter. He is employed in two occupations, and no tip credit can be taken for his hours of employment in his occupation of maintenance man. Such a situation is distinguishable from that of a waitress who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses. . . . Such related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips. 29 CFR 541.56(e)

53. The Dual Jobs regulation imposes both quantitative and qualitative restrictions on the employer's ability to take the tip credit for non-tip-producing tasks, as explained in the DOL's Field Operations Handbook (the "Handbook" or "FOH"). The quantitative restriction limits the amount of time an employee can spend on tasks related to the tipped occupation, as follows 29 CFR 531.56(e) permits the employer to take a tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties, are not by themselves directed toward producing tips, provided such related duties are incidental to the regular duties of the tipped employees and are generally assigned to the tipped employee. For example, duties related to the tipped occupation may include a server who does preparatory or closing activities, rolls silverware and fills salt and pepper shakers while the restaurant is open, cleans and sets tables, makes coffee,

and occasionally washes dishes or glasses. FOH Section 30d00(e)(2) (rev. 668, June 20, 2012). The Handbook continues: "[W]here the facts indicate that tipped employees spend a substantial amount of time (in excess of 20 percent of the hours worked in the tipped occupation in the workweek) performing such related duties, no tip credit may be taken for the time spent in those duties. All related duties count toward the 20 percent tolerance. FOH Section 30d00(e)(3). This "20 percent tolerance," which is one method of determining whether an employee is effectively engaged in a dual jobs position, is referred to as the "20% Rule."

54. Likewise, under state law, Defendants were not entitled to a tip credit because the bartenders and Plaintiffs non-tipped duties exceeded 20% of each workday (or 2+ hours a day, whichever was less).

55. In addition to their tip-producing duties involved in serving customers, Defendants' Tip-Credit Employees were required to perform non-tipped work each shift which does not involve guest interaction or generate tips.

56. Defendants required their Tip-Credit Employees to perform non-tipped work after their Restaurants are closed to customers, again without any separate minimum wage rate.

57. Defendants have a policy and practice of paying Tip-Credit Employees subminimum hourly wages under the tip-credit provisions of the federal and state law.

**Tip Misappropriation**

58. In addition, Defendants maintained a policy and practice of unlawfully appropriating Plaintiffs and members of the FLSA Collective's tips.

59. Defendant Emanuele Nigro often gave himself a full share of tips, which is a larger of share of the tip pool than bussers or runners like Plaintiff Zarate received, even though

Defendant Nigro was an owners, manager and supervisor and thus ineligible to participate in the tip pool.

60. Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

61. Defendants did not keep records of hours each employee worked, or payments made to each employee, or tips collected and distributed by the restaurant.

## FLSA COLLECTIVE ACTION CLAIMS

62. Plaintiffs brings their FLSA minimum wage and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants, or any of them, on or after the date that is three years before the filing of the complaint in his case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

63. At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them the required minimum wages.

64. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
## VIOLATION OF THE FLSA MINIMUM WAGE PROVISION

65. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

66. At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d).

67. Defendants had the power to hire and fire Plaintiffs (and the FLSA class members), controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

68. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

69. Defendants failed to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

70. Defendants' failure to pay Plaintiffs (and the FLSA Class members) at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

71. Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## VIOLATION OF THE NYLL MINIMUM WAGE PROVISION

72. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

73. At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

74. Defendants had the power to hire and fire Plaintiffs, controlled terms and conditions of employment, and determined the rates and methods of any compensation in exchange for employment.

75. Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

76. Defendants' failure to pay Plaintiffs minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

77. Plaintiffs were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### NEW YORK NOTICE REQUIREMENTS, NYLL §§ 195(1)(a), 195(3), 198

78. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

79. Defendants did not provide Plaintiffs with the Wage Theft Prevention Act notice at the time of hire as required by NYLL § (1)(a)

80. Defendants did not provide Plaintiffs with correct and accurate notices/wage statements required by NYLL § 195(3).

81. As a result of Defendants' unlawful conduct, Plaintiffs are entitled to an award of damages pursuant to NYLL § 198, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by NYLL § 198.

### FOURTH CAUSE OF ACTION
### TIP MISAPPROPRIATION SECTION 196-D NEW YORK LABOR LAW

82. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

83. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

84. New York State Labor Law § 196-d prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the

gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

85. Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers and used those tips to pay managers and owners of the restaurant.

86. Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the NYLL and supporting Department of Labor Regulations.

87. Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
## TIP MISAPPROPRIATION SECTION 29 U.S.C. § 203(M)

88. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

89. At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA.

90. The FLSA prohibits any employer or his agents, including owners and managers, from demanding or accepting, directly or indirectly, any part of the gratuities received by an employee, or retaining any part of a gratuity, or any charge purported to be a gratuity, for an employee.

91. Defendants unlawfully misappropriated a portion of Plaintiffs' tips that were received from customers and used those tips to pay managers and owners of the restaurant.

92. Defendants knowingly and intentionally retained a portion of Plaintiffs' tips in violations of the FLSA and supporting regulations.

93. Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## FAILURE TO PAY SPREAD OF HOURS

94. Plaintiffs reallege and incorporate by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

95. At all times relevant to this Action, Plaintiffs were employees of Defendants pursuant to the NYLL.

96. Throughout their employment, Plaintiffs were required to work shifts that lasted longer than ten hours.

97. Despite the length of their shifts, Defendants failed to pay them spread of hours compensation.

98. Plaintiffs were damaged in an amount to be determined at trial.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray that judgment be granted awarding:

A. An award of damages, according to proof, including unpaid wages and misappropriated gratuities and unpaid spread of hours and liquidated damages, to be paid by Defendants;

B. An award of damages, according to proof, including, back pay, front pay, compensatory damages, emotional distress damages, punitive damages, and liquidated damages, to be paid by Defendant;

C. Penalties available under applicable laws;

D. Costs of action incurred herein, including expert fees;

E. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663, and other applicable statutes;

F. Pre-judgment and post-judgment interest, as provided by law; and

G. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

## JURY DEMAND

Plaintiff demands trial by jury on all counts so triable.

Dated: New York, New York  
July 12, 2021

Respectfully submitted,

KLEIN LAW GROUP OF NY PLLC

By: /s/ Julia Klein
   Julia Klein
   120 East 79th Street, Suite 1A
   New York, New York 10021
   347.292.8170
   jklein@kleinlegalgroup.com
   Attorneys for Plaintiff