March 18, 2022

**Via ECF**
Honorable Vernon S. Broderick
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:   *Curko et al. v. Embe Restaurant Corp., et al.*
             <u>Civil Action No. 21-cv-05977</u>

Your Honor:

      We are attorneys for the plaintiffs, Anthony Curko and Oscar Zarate (collectively, "Plaintiffs") in the above-captioned matter, and write jointly with counsel for defendants Embe Restaurant Corp. d/b/a Osteria 57 and Emanuele Nigro (together, "Defendants") (collectively, the "Parties") seeking approval of the Parties' Settlement Agreement and Release (the "Settlement Agreement") attached hereto as <u>Exhibit A</u>. For the reasons set forth below, the Parties respectfully request that the Court approve the Settlement Agreement pursuant to the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). The Parties respectfully maintain that the terms of the Settlement Agreement are fair and reasonable pursuant to the factors set forth in *Wolinksy v. Scholastic Inc.*, 900 F.Supp. 2d 332, 335-36 (S.D.N.Y. 2012).

    **I.**      **Plaintiff's Allegations and Defendants' Responses**

      Messrs. Curko and Zarate filed this action alleging that Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL") (the "Action"). Curko claims that he worked as a waiter/bartender from approximately April of 2019 through March of 2020 at a restaurant called Osteria 57, which Defendants owned and operated. Mr. Zarate worked as a busser/runner at the same restaurant from March 2019 through September of 2019. Mr. Curko primarily claims that he often worked 50 hours per week, yet he received a straight weekly salary of $1000.00 per week, without ever receiving overtime compensation when he worked over 40 hours per week. He also claims that as a server/bartender he directly received tips from the restaurant's guests, but that the restaurant misappropriated, and failed to remit those tip earnings to him. Mr. Zarate claims that he worked approximately 35 hours per week and that Defendants applied a tip credit towards his wages even though they were unable to do so because Defendants failed to provide him with notice of the tip credit and because Mr. Nigro, the owner of the restaurant, retained a portion of the tips that guests left for the service staff. Defendants vehemently deny Plaintiffs' allegations. Specifically, Defendants dispute Plaintiff's recollections of the dates and time periods in which they worked. Defendants also vigorously dispute the allegations that they misappropriated tips and also dispute Plaintiff's damage calculations.

    **II.**     **Discovery**

During discovery, Defendants produced some payroll records showing that Mr. Zarate worked between 5 and 35 hours per week, but far less than the 35 hours Mr. Zarate recalls working most weeks. Defendants also produced records showing that they paid Mr. Curko $1,000 per week. Defendants also maintain that they can provide witness testimony to establish that the restaurant was only open for dinner shifts and not often open on weekends, which calls into question whether Mr. Curko worked 50 hours per week. Additionally, as a restaurant, Defendants' business was significantly impacted by the COVID-19 pandemic and Defendants asserted that they would be able to produce confidential financial records demonstrating that they may be unable to satisfy a large judgment if Plaintiffs ultimately prevailed in their claims.

### III. The Settlement is Fair and Reasonable and Should be Approved

As articulated in *Wolinksy*, when assessing the fairness of a settlement a court should consider the totality of the circumstances including but not limited to several factor such as: (i) the range of possible recovery; (ii) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (iii) the seriousness of the litigation risks faced by the parties; (iv) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (v) the possibility of fraud or collusion. *See Wolinsky*, 900 F.Supp. 2d at 335. The Parties have agreed on a $55,000 settlement. Based on an analysis of these factors, the Parties respectfully request that the Court approve the Settlement Agreement and deem it fair and reasonable.

#### A. The Range of Possible Recovery

##### 1. Anthony Curko

Prior to receiving the Defendants' document production, the undersigned prepared a damage calculation spreadsheet utilizing Plaintiffs' recollections and limited records and calculated that Defendants owed Plaintiff Curko $85,400.00 in compensatory ***and*** liquidated damages. (*See* Exhibit B) In reaching this conclusion, Plaintiffs assumed that Mr. Curko worked an average of 50 hours per week (i.e., about 10 hours of unpaid overtime compensation per week). In addition, Plaintiffs also assumed that he would have earned about $350 per week had Defendants included him in the tip pool (as noted above, Defendants excluded Mr. Curko from the tip pool and he received no tip compensation at all). Plaintiffs based this number solely on Mr. Curko's recollections concerning the standard tip distribution at the restaurant. Mr. Curko had no records showing the amount of tips left at the restaurant, nor any tip sheets showing the distribution of tips at the restaurant. Plaintiffs also calculated that Defendants owed Mr. Curko $5,000, the maximum statutory penalty for not providing him with Wage Theft Prevention Act notices at the commencement of employment, and another $5,000 for not providing him with wage statements as required by the NYLL.

Throughout the litigation, Defendants vehemently argued that Mr. Curko was not entitled to any damages at all. Initially, they claimed that he was an independent contractor/consultant who was hired to provide restaurant consultation services based on his vast experience in the hospitality industry. As an independent contractor, Defendants claim that Mr. Curko was not entitled to overtime compensation or tip earnings. Alternatively, Defendants argued that even if Mr. Curko was an employee, he still was not entitled to any overtime compensation because he

did not work overtime. Defendants claim that the restaurant was only open for dinner from the hours of 5:00 p.m. to 10:00 p.m. and for a Saturday and Sunday brunch from 11:30 a.m. to 3:00 p.m. They claim that Mr. Curko was only scheduled for 3-5 shifts per week, which would indicate that he never worked overtime often during his employment.[1] Defendants have asserted that their managers would testify that Mr. Curko worked less than 40 hours per week and they have also represented that they would be able to secure the testimony of other non-exempt employees to corroborate their testimony. If Defendants are correct than Mr. Curko might not recover any money at all for his unpaid overtime claims. With respect to the tip misappropriation claims, Defendants claim that Mr. Curko was ineligible to participate in a tip pool because he was not a food service worker since he spent more than 20% of his time performing no-tip producing duties, including consulting on Osteria 57's operations. *See* 12 N.Y.C.R.R. § 146-3.4. Therefore, according to Defendants, Mr. Curko was not entitled to any tip compensation at all. If Defendants prevailed on this legal theory, Mr. Curko would receive no tip misappropriation damages. Since Defendants maintain that Mr. Curko was an independent contractor, they also dispute that they were required to provide him with pay stubs or a rate of pay notice. Accordingly, Mr. Curko's range of recovery is $0 if Defendants prevailed on their defenses to approximately $85,400, if Plaintiffs prevailed and Mr. Curko's share of the settlement is $23,864.79.

### 2. Oscar Zarate

Plaintiffs calculated that Defendants owed Plaintiff Zarate $44,992.00 in compensatory *and* liquidated damages. (*See* Exhibit C). Plaintiffs calculations are based on the assumption that Mr. Zarate worked 35 hours per week. Plaintiffs also assumed that Defendants misappropriated about $150 per week from the tip (Plaintiffs claim that the owner of the restaurant, Emanuele Nigro occasionally took tip left for food service workers). Plaintiffs based this number solely on their recollections concerning the standard tip distribution at the restaurant but, as discussed above, they have no records showing the amount of tips left at the restaurant, nor any tip sheets showing the distribution of tips at the restaurant. Plaintiffs also calculated that Defendants owed Mr. Zarate $10,000.00 for violation of the record keeping provision of the Wage Theft Prevention Act.

In response to these claims Defendants do not appear to dispute that they failed to provide Mr. Zarate with adequate notice of the tip credit; however, they produced pay records demonstrating that Mr. Zarate worked between 5 and 35 hours per week and averaged approximately 15 hours per week. Assuming these records accurately reflect the time that Mr. Zarate worked, he would be entitled to $6,246.00 in compensatory/minimum wage damages. Defendants dispute that their violation was willful and thus dispute that Mr. Zarate could recover liquidated damages. Defendants maintain that they provided verbal notice to Mr. Zarate of his rate of pay and compliant pay stubs and thus claim that they do not owe any Wage Theft Prevention Act damages. Therefore, the range of possible recovery for Mr. Zarate $6,246.00 to $44,992.00 and his recovery under the settlement agreement is $11,968.21.

The calculations attached to this Motion reflect a best case scenario for Plaintiffs and do not factor Defendants' defenses or the fact that Defendants' business is experiencing financial hardship due to the Covid-19 pandemic, and that Defendant could either declare bankruptcy or

---

[1] Defendants, however, never kept time records for Mr. Curko's employment, so there are no records indicating which party is likely to succeed on these claims. Mr. Curko would certainly testify as to his recollection but

become insolvent. These calculations also do not factor in the fact that the proceedings could carry on and the inherent risks and uncertainties of proceeding to a jury trial

### B. The Extent to Which the Settlement Will Enable the Parties to Avoid Anticipated Burdens and Expenses in Establishing Their Respective Claims and Defenses and the Seriousness of the Litigation Risks Faced By the Parties

Considering the risks and uncertainty of trial, and the stability of Defendants' business in a post-Covid environment, Plaintiffs' counsel believes that this settlement is a fair result and should be approved. While Plaintiffs believe in the strength of their claims, Defendants assert that they have evidence contradicting Plaintiffs' claims, and can produce witnesses to combat Plaintiffs' assumptions about the hours that they worked and about the composition of the tip pool. Indeed, Defendants have already produced some persuasive evidence in the form of Mr. Zarate's pay records and the website showing their hours of operation demonstrating that Plaintiffs did not work all of the hours they allege. Aside from the factual disputes, the Parties also have divergent legal views on this case regarding the amount of Plaintiffs' alleged damages for minimum wages violations and whether they are entitled to such damages at all.

Both Plaintiffs and Defendants claim they have witnesses who would testify regarding the work duties actually performed by Plaintiff. It is certainly possible that Plaintiffs' recovery at trial would have been substantially less than the proposed settlement amount. Because of the anticipated risks and costs involved in pursuing this matter through discovery and trial, settlement is an effective means of resolving the litigation for both parties.

### C. The Settlement Negotiations Occurred At Arm's Length and There is No Possibility of Fraud or Collussion

From the onset of this Action, the Parties engaged in communications and discussion in an effort to settle this matter. The Parties are represented by separate counsel and all discussions occurred at arms' length without any collusion. The parties reached this settlement during a mediation conducted by a mediator appointed by the Southern District of New York's mediation programs who helped facilitate and negotiate the settlement, which is an indication that the negotiations occurred at arms' length without collusion.

### D. Plaintiff's Counsel is Entitled to Reasonable Attorney's Fees and Costs

The Settlement Agreement also provides for reasonable attorney's fees and costs. Pursuant to the undersigned's engagement agreement with Plaintiffs the firm will be reimbursed $18,315.00 in fees, representing 1/3 of the recovery after costs, and $852.00 for costs.[2]

The contingency fee Plaintiffs agreed to in their retainer agreement with the Klein Law Group of New York PLLC should be approved. *In re Lawrence*, 24 N.Y. 3d 320, 339 (2014) ("Absent incompetence, deception or overreaching, contingent fee agreements that are not void at the time of inception should be enforced as written."). "A contingency fee is presumptively valid

---

[2] Costs include a filing fee with the Southern District of New York for $402.00, and an attempt of service of process for $450.00.

where 'the proposed fee amount is exactly one-third of the net settlement amount,'" as it is in this case. *Angamarca v. Hud-Moe LLC*, Index No. 18-cv-1334, 2018 WL 6618412, at *1 (S.D.N.Y. Dec. 17, 2018) (*quoting Yunjian Lin v. Grand Sichuan 74 St Inc.*, Index No. 15-cv-2950, 2018 WL 3222519, at *5 (S.D.N.Y. July 2, 2018).

Furthermore, "courts in this Circuit have routinely found an award representing one third of the settlement amount to be reasonable." *Yong Yuan Wang v. Mandarin Glen Cove, Inc.*, Index No. 18-cv-03266, 2019 WL 5695910, at *2 (E.D.N.Y. Sept. 30, 2019) (*citing Romero v. Westbury Jeep Chrysler Dodge, Inc.*, Index No. 15-cv-4145, 2016 WL 1369389, at *2 (E.D.N.Y. Apr. 6, 2016). Most recently, the Second Circuit has held that there is no reason to limit attorneys' fees in FLSA actions to 33.33% of the amount recovered. *See Fisher v. SD Prat. Inc.*, 948 F.3d 593,603 (2d Cir. 2019) ("Neither the text nor the purpose of the FLSA ... supports imposing a proportionality limit on recoverable attorneys' fees," because such a rule would be "inconsistent with the remedial goals of the FLSA").

Notably, the fees requested here are extremely similar to the lodestar of approximately $17,389.50 as reflected in the Klein Law Group of New York PLLC's contemporaneous billing records. *See* Ex. D. The fees and costs requested are fair and reasonable as being less than the lodestar (*see id.*), as being consistent with the terms of Plaintiff's retainer agreement with the Klein Law Group of New York PLLC, and as amounting to a fair and reasonable payment in light of the "considerable risk" that the Klein Law Group of NY, PLLC undertakes by representing employees in wage-and-hour cases on a contingency fee basis. *See, e.g., Sanchez v. JMP Ventures, L.L.C.*, Index No. 13-cv-7264, 2015 WL 539506, at *6 (S.D.N.Y. Feb. 10, 2015). Accordingly, the Klein Law Group of New York PLLC respectfully requests that the Court approve the one-third contingency fee and reimbursement of its costs incurred in this case as fair and reasonable.

The Klein Law Group of New York PLLC represents both plaintiffs and defendants in litigating claims arising out of the employment relationship including claims for wage and hour violations, employment discrimination, whistleblower retaliation, and contract disputes. I am the principal attorney of the Klein Law Group of New York PLLC. I graduated from Fordham Law School in 2006 and worked at the firm of McKee Nelson, LLP from approximately 2006 through-2009. I then practiced at the firm of Murtha Cullina, LLP from approximately 2011 to 2013. From 2013 to 2017 I worked at Robinson & Cole LLP and then began working at the City of New York's Housing and Preservation Department from 2017-2019. Following that I opened the Klein Law Group of New York PLLC, a firm that focuses primarily on employment law. I typically charge an hourly rate of $375 per hour.

We thank the Court for consideration in this matter.

Respectfully submitted,

*/s/ Julia H. Klein*

Cc: Counsel for Defendants (via ECF)